IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                              CRIMINAL ACTION NO. 3:10-00034

RONALD MARK CHAPMAN

**ORDER**

Pending is the defendant's Appeal of and *De Novo* Review of the Magistrate's Ruling of the Detention Order (Doc. # 19). Following its *de novo* review of the detention order issued on January 27, 2010, the Court **FINDS** that no condition or combination of conditions which the Court could establish will reasonably assure the safety of other persons and the community. Consequently, the Order is **AFFIRMED**. *See* 18 U.S.C. § 3142(e).

**Standard of Review**

Title 18 U.S.C. § 3142(b) requires that a defendant be released pending trial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). To determine whether any condition or combination of conditions could satisfy this standard, the relevant judicial officer must hold a hearing. 18 U.S.C. § 3142(f). At such hearing, the Court is instructed to consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a firearm; (2) the weight of the evidence against the person; (3) the history and character of the person, including the individual's

physical and mental health, past conduct, and history related to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  The district court reviews a magistrate judge's detention pursuant to 18 U.S.C. § 3145(b).  Such review is *de novo*.  *See United States v. Clark*, 865 F.2d 1433, 1435-36 (4th Cir. 1989); *United States v. Williams*, 753 F.2d 329, 333-34 (4th Cir. 1985).

The defendant is a life-long resident of Cabell and Kanawha Counties, with extensive familial and other ties to the community.  Therefore, the Court **FINDS** that the defendant does not pose a danger of non-appearance.  Consequently, the detention order is reviewed to determine: (1) whether the defendant may pose a danger to any person or to the community, and (2) whether there is a condition or combination of conditions that would reasonably assure the safety of all persons and the community.

## Analysis

The defendant is a 15-year veteran of the St. Albans, West Virginia, police department, charged with possessing a firearm and ammunition while subject to a Domestic Violence Protective Order ("DVPO"), in violation of 18 U.S.C. § 922(g)(8).  The Criminal Complaint filed against the defendant on January 19, 2010, alleges that the defendant knowingly possessed firearms and ammunition on December 28, 2009, while subject to a DVPO.  Further, the Criminal Complaint alleges that said DVPO "was issued after a hearing of which defendant received actual notice, and at which defendant had an opportunity to participate."  *See Criminal Complaint* (Doc. #1).

On January 25, 2010, Magistrate Judge Maurice G. Taylor, Jr. held a detention hearing to determine whether the defendant should be released pending his trial for the 18 U.S.C. § 922(g)(8) offense.  At the hearing, Magistrate Judge Taylor heard testimony from: Alcohol, Tobacco, Firearms

and Explosives Special Agent Jason C. Lawler; a former co-worker of the defendant from the St. Albans and East Bank Police Departments, Richard Alan Thomas; the defendant's father, Ronald Lynn Chapman; and the defendant's ex-wife, Carla Jo Clark Chapman. The witnesses testified, regarding: (1) the events leading up to the filing of an emergency DVPO against the defendant on October 29, 2009, and the entry of a final DVPO on November 3, 2009; (2) the events leading up to the defendant's alleged suicide attempt and arrest on December 28, 2009; (3) information and evidence relevant to the offense conduct; and (4) the conditions of release which the defendant contends would be sufficient to reasonably assure the safety of other persons and of the community. Both the United States and the defendant were allowed to present witnesses, as well as to cross-examine the witnesses presented against them.

In the process of its *de novo* review, this Court has considered the arguments and allegations made by the parties; the transcript of the January 25, 2010, detention hearing; the pretrial services report and addendum to such report issued by the United States Probation Office; and the medical records pertinent to the defendant's stay at and subsequent release from Mildred Mitchell Bateman Hospital. According to such review, the Court finds as follows.

The defendant's ex-girlfriend (who for privacy reasons is not named) sought an ex-parte Emergency DVPO against the defendant on October 29, 2009. The Emergency DVPO followed several instances of stalking and/or harassment by the defendant and ordered him: (1) not to have any contact with the ex-girlfriend; (2) not to possess any firearms; and (3) to appear at a hearing regarding the DVPO related charges. Prior to the issuance of the Emergency DVPO, on October 29, 2009, St. Albans Police Chief Joey Crawford had warned the defendant to stay away from his ex-girlfriend. Further, as a result of the Emergency DVPO, the defendant was placed on

administrative leave from the St. Albans Police Department. On November 3, 2009, following a hearing at which the defendant appeared with counsel, a final DVPO was issued. This Final DVPO ordered the defendant, for the second time: (1) not to have any contact with his ex-girlfriend, and (2) not to possess any firearms or ammunition. Following issuance of this Final DVPO, the defendant resigned from his position at the St. Albans Police Department.

On November 4, 2009, an order to seize firearms and ammunition from the defendant was issued by the Kanawha County Circuit Court. Based upon information provided to the St. Albans Police Department by the defendant, it was understood that the defendant was staying with his ex-wife in Milton, West Virginia. Therefore, the seizure order was forwarded to the Milton Police Department, which attempted to execute the Order on November 6, 2009. The seizure of firearms, however, was not successful, for, according to Carla Chapman's testimony, the defendant was aware of the seizure order and, prior to its execution, arranged for all firearms to be removed from her residence. According to Ms. Chapman's testimony, the defendant then arranged to have said firearms returned to the residence after the attempted seizure.

Then, on December 28, 2009, while staying at Ms. Chapman's residence, the defendant allegedly attempted suicide. Again, according to her testimony, Ms. Chapman interrupted the defendant in the middle of a gun-related suicide attempt. She engaged in a physical struggle with the defendant, attempting to wrestle at least two guns from him, and then, when the defendant obtained a third gun, she fled the area. During the physical struggle between Carla Chapman and the defendant, two shots were fired. Both bullets entered a wall in the bedroom in which the struggle occurred. After Ms. Chapman fled the bedroom, a third and final shot was fired. Remnants of the bullet from this shot were found in the lawn of a neighboring residence, where Ms. Chapman

had run to call the police. The police arrived on the scene shortly thereafter and the defendant was arrested. The defendant was then admitted to Mildred Mitchell Bateman Hospital for inpatient treatment that day, December 28, 2009.

The defendant remained at Mildred Mitchell Bateman Hospital until January 19, 2010, when he was released to the custody of the United States Marshal Service. The defendant was then taken to the Carter County Jail, where he remains pending trial on his 18 U.S.C. § 922(g)(8) offense.

The Court is pleased to note that the U.S. Probation Officer has informed the Court that the defendant is on medication and doing reasonably well at the Jail. The Court finds it is undoubtedly important for the defendant to remain on his medication and, to the best of his ability, to avoid the stressors which contributed to the issuance of the emergency and final DVPOs, and to the defendant's condition and arrest on December 28, 2009. The Court further finds that the defendant's detention is appropriate because, based on the testimony presented at the defendant's detention hearing on January 25, 2010, viewed in light of the pretrial services report and addendum provided by the U.S. Probation Office and the defendant's medical records from the Hospital, the Court **FINDS** there is no condition or combination of conditions of release that would reasonably assure the safety of other persons of the community.[1]

To begin with, the issuance of the DVPO implies a risk of danger to others, and the violation of 18 U.S.C. § 922(g)(8) involves a firearm, a factor 18 U.S.C. § 3142(g) explicitly instructs the

---

[1]Such a finding is made despite conflicting testimony, regarding: (1) whether the person who obtained the Emergency and Final DVPOs against the defendant qualifies as his "intimate partner," and (2) whether the shot fired out of the window on December 28, 2009, was intentionally fired in the direction of the defendant's ex-wife's. The first issue is not relevant to the Court's dangerousness finding. Further, the second issue, although relevant, is not necessary to such a finding.

Court to consider.  Further, regardless of the merits of the Final DVPO, it is clear that (1) the Order was issued on November 3, 2009; (2) the defendant was aware of the DVPO; and (3) the defendant knew the DVPO prohibits him from possessing firearms and ammunition.  Notwithstanding this prohibition, however, the defendant was found to be in possession of up to six firearms on December 28, 2009.  Further, the testimony at the defendant's detention hearing indicates that: (1) the defendant actively concealed such firearms from the Milton Police Department in order to prevent them from being seized, and (2) such firearms were subsequently involved in a physical struggle between the defendant and his ex-wife, Carla Chapman.  Finally, according to the testimony heard at the detention hearing, it is uncontested that, prior to being placed on administrative leave on October 29, 2009, the defendant was ordered by Chief Crawford of the St. Albans Police Department not to have contact with his ex-girlfriend, an order the defendant chose not to follow.

Taken together, the aforementioned facts demonstrate: (1) that the defendant poses a danger to other persons and to the community, including, at a minimum, a threat to himself, his ex-wife and his ex-girlfriend; and (2) that, because he has a history of not following court orders or other conditions placed upon him, there is no condition or set of conditions that would reasonably assure the safety of other persons or of the community.[2]  As a result, the defendant's appeal is **DENIED** and he is **ORDERED** detained pending trial.

---

[2] Based on the defendant's past willingness to avoid authority, the Court has grave doubts whether, if released, the defendant could effectively be supervised by his father or the U.S. Probation Office.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: March 2, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE