**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                              CRIMINAL  ACTION  NO. 3:10-00034

RONALD MARK CHAPMAN

**MEMORANDUM OPINION AND ORDER**

Pending is the defendant's Motion to Dismiss (Doc. 38).  For the reasons explained below, the Court **DENIES** the motion.

**Background**

On February 17, 2010, a grand jury sitting in the Southern District of West Virginia returned a single count indictment against the defendant, charging him with a violation of 18 U.S.C. § 922(g)(8) and 924(a)(2).  The indictment alleges that on or about December 28, 2009, at or near Milton, West Virginia, the defendant knowingly possessed six firearms and approximately 941 rounds of ammunition, in and affecting interstate commerce.  At the time the defendant possessed the firearms and ammunition he was subject to a Domestic Violence Protection Order ("DVPO") which was issued after a hearing of which the defendant received actual notice, and at which the defendant had an opportunity to participate.

Prior to October 2009, the defendant was in a romantic relationship with the victim.  This relationship lasted approximately three-and-a-half years.  During this period of time, the defendant

frequently stayed overnight at the victim's residence, kept a toothbrush and clothing there, and the two vacationed together.

In October 2009, the victim informed the defendant that she wanted to end the relationship. Shortly thereafter, the defendant began to stalk the victim. She contacted the police on October 16, 2009, to have him removed from her residence. Within days, he was spotted by neighbors outside the victim's new boyfriend's residence in South Charleston, West Virginia. At the time, the defendant was wearing black clothing and a black toboggan. The neighbors approached him and he falsely stated that he was a South Charleston Police Officer. After this incident, the defendant's boss, St. Albans Police Chief Joey Crawford, ordered defendant to cease contact with the victim. Despite the warning the defendant continued to stalk the victim and was caught by her on October 28, 2009.

Following the October 28, 2009 incident, the victim sought and obtained an ex parte Emergency Domestic Violence Protection Order ("EVDPO") in Kanawha County, West Virginia. The EVDPO was subsequently served upon the defendant. It restrained him from contacting the victim, ordered him not to possess any firearms or ammunition, and summoned him to appear at a hearing to be held on November 3, 2009, to respond to the domestic violence allegations.

After the EVDPO was issued, Chief Crawford placed the defendant on administrative leave from the St. Albans Police Department. Chief Crawford advised the defendant that an internal investigation would be conducted regarding the alleged harassing and stalking of the victim

On November 3, 2009, the defendant and his counsel appeared for a hearing on a final DVPO. The victim was present without counsel. The court heard testimony from both the victim and the defendant and heard argument from defendant's counsel. After the hearing the court issued

-2-

the final DVPO.  This Order restrained the defendant from "abusing, harassing, stalking, threatening, intimidating or engaging in conduct that places Petitioner . . . in reasonable fear of bodily injury."  It also cautioned "According to W.Va. Code § 48-27-403(a), the respondent is further informed that the respondent shall not possess any firearms (even those for which the respondent has a license to possess) or ammunition while this protective order is in effect as this may violate federal law."  The defendant was further advised, in bold print within the Order, that "Possessing a firearm while this Protective Order is in effect may be a criminal offense under West Virginia Code § 61-7-7" and that "Possessing a firearm or ammunition while this Protective Order is in effect may be a criminal offense under federal law."

On November 4, 2009, a Kanawha County Magistrate Court issued an order to seize firearms and ammunition from the defendant.  Because the defendant had told Chief Crawford that he was staying at his ex-wife's residence in Milton, West Virginia, the order was forwarded to the Milton Police Department. On November 6, 2009, Milton police officers went to the defendant's ex-wife's residence to seize his firearms and ammunition. She informed them that no firearms were present on the property.  A few days later, however, on November 10, 2009, her father brought the defendant's firearms to her home.  They had been removed prior to issuance of the Kanawha County court order; she presumed at the request of the defendant.

On December 28, 2009, the defendant's ex-wife told him that things were not working between them.  Defendant became upset and his father and another individual came to the house to calm him down.  Later the same day, his ex-wife found him in their bedroom with a .45 caliber handgun.  Defendant informed her that he planned to kill himself.  As she attempted to get the handgun from him, two shots were fired into the bedroom wall.  Defendant then went to the closet

to get a shotgun.  His ex-wife was again able to get the gun from him.  Defendant then picked up a .38 revolver and his ex-wife fled.  After she left the residence, the defendant fired two shots out of the bedroom window, in her direction.

The defendant's ex-wife called 911 from their neighbor's home.  Officers responded and surrounded the residence.  After about ten minutes, the police were able to convince the defendant to leave the house.  He was placed under arrest.  Officers then entered the residence to ensure that no on else was inside.  Three firearms were in plain view.  Defendant's ex-wife then entered and helped the officers find three other firearms and approximately 941 rounds of ammunition.

## Standard of Review

The Court may, at any time during the pendency of a case, hear a claim that an indictment "fails to invoke the court's jurisdiction or to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).  An indictment is defective if it alleges a violation of an unconstitutional statute, or if the "allegations therein, even if true, would not state an offense."  *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *see also*, *In re Civil Rights Cases,* 109 U.S. 3, 8-9 (1883).  A court must dismiss an indictment it finds to be defective.

## Analysis

The defendant, Mr. Chapman, is charged with violating 18 U.S.C. 922(g)(9), which provides:

> It shall be unlawful for any person –
> (8) who is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such

intimate partner or person, or engaging in other
conduct that would place an intimate partner in
reasonable fear of bodily injury to the partner or child,
except that this paragraph shall only apply to a court
order that –

(A) was issued after a hearing of which such a person
received actual notice, and at which such person had
the opportunity to participate;

(B) restrains such person from harassing, stalking, or
threatening an intimate partner of such person or child
of such intimate partner of person, or engaging in
conduct that would place an intimate partner in
reasonable fear of bodily injury to the partner or
child; and

(C)(i) includes a finding that such person represents
a credible threat to the physical safety of such
intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted
use, or threatened use of physical force against such
intimate partner or child that would reasonably be
expected to cause bodily injury . . . to . . . possess . .
. any firearm or ammunition.

I.      **The Indictment Is Not Rendered Defective As a Result of the Protective Order's Lack
of Finding or Factual Support for a Finding of "Intimate Partners"**

To prove a violation of 922(g)(8) the United States must prove several elements beyond a

reasonable doubt, namely: 1) that the defendant knowingly possessed a firearm; 2) at a time when

he was subject to a qualifying court order; and, 3) that the firearm was in or affecting interstate

commerce.  18 U.S.C. § 922(g)(8).  Several procedural protections must be in place for a DVPO to

be applicable to a § 922(g)(8) restriction; these include:  1) that the order was issued after a hearing

had been scheduled; 2) that the defendant received actual notice of the hearing, and 3) that he had

an opportunity to participate in the hearing.  *Id.*  The government must also prove, beyond a

reasonable doubt, that the order contains specific contents: 1) that it restrains the defendant from

harassing, stalking, or threatening an intimate partner or engaging in other conduct that would place

-5-

an intimate partner in reasonable fear of bodily injury; and, 2) that the order included a finding that defendant represents a credible threat to the physical safety of such intimate partner or an explicit prohibition on the use or threatened use of physical force against an intimate partner.  *Id.*

The defendant argues that the indictment against him should be dismissed because the underlying DVPO, under which he was restricted, made neither express findings nor set forth a factual basis for finding he and the victim were "intimate partners."   This is not a requirement for issuance of the order, because in West Virginia a domestic violence protection order can protect a much broader class of persons than just an intimate partner as defined under federal law.[1]  As a

_____

[1] "Family or household members" whom a domestic violence restraining order may be issued to protect in West Virginia include people who:

> (1) Are or were married to each other;
>
> (2) Are or were living together as spouses;
>
> (3) Are or were sexual or intimate partners;
>
> (4) Are or were dating: Provided, That a casual acquaintance or ordinary fraternization between persons in a business or social context does not establish a dating relationship;
>
> (5) Are or were residing in the same household;
>
> (6) Have a child in common regardless of wether they have ever married or lived together;
>
> (7) Have the following relationships to another person:  (A) Parent; (B) Stepparent; (C) Brother or sister; (D) Half-brother or half-sister; (E) Stepbrother or stepsister; (F) Father-in-law or mother-in-law; (G) Stepfather-in-law or stepmother-in-law; (H) Child or stepchild; (I) Daughter-in-law or son-in-law; (J) Stepdaughter-in-law or stepson-in-law; (K) Grandparent; (L) Step grandparent; (M) Aunt, aunt-in-law or step aunt; (N) Uncle, uncle-in-law or step uncle; (O) Niece or nephew; (P) First or second cousin; or
>
> (8) Have the relationships set forth in paragraphs (A) through (P), subdivision (7) of this section to a family or household member, as defined in subdivisions (1)

(continued...)

-6-

result, the defendant contends that his due process rights have been infringed and that the statute is unconstitutionally vague.

A.      *The Defendant's Right to Procedural Due Process Has Not Been Infringed*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Matthews v. Eldridge,* 424 U.S. 319, 332 (1976).  In considering whether procedural due process has been afforded, the court must balance three interests: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through procedures used;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail."  *Id.* at 335.

As support for his position that his procedural due process right has been violated, the defendant cites *United States v. Emerson*, which expressed concern over a lack of express findings to satisfy either 922(g)(8)(C)(i) or (ii) in a Texas domestic violence protection order.  *See* 270 F.3d 203, 261 (5th Cir. 2001). Section 922(g)(8)(C)(i) and (ii) are the provisions which require either an express "finding" of a threat against an intimate partner of child or an explicit prohibition on the use or threatened use of force against and an intimate partner of child.  While the *Emerson* court did express concern because there was not an explicit finding of a threat and the prohibition on force appeared to be based on boiler-plate, it ultimately found that due process had been satisfied. *Id.* at 261-264. The court explained, "[w]e conclude that Congress in enacting section 922(g)(8)(C)(ii)

---

[1](...continued)
through (6) of this section.

proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined." *Id.* at 262.

This Court disagrees with the defendant, and considering the balancing of factors enunciated in *Matthews v. Eldridge,* finds that the defendant has and will receive the process he is due. The DVPO at issue here explicitly contained the prohibition required by § 922(g)(8)(C)(ii) and the same Congressional intent discerned in *Emerson* is applicable here – that a court cannot make prohibition listed in § 922(g)(8)(C)(ii) unless those prohibitions were not contested or the court finds that there is a real threat of danger. While the order did not set forth an express finding or facts supporting a finding that the victim/petitioner was an intimate partner of the defendant, it did not need to do so: the Order specifically identifies the victim. Because this identification is made, the Government can (and will be required to) prove as part of its prosecution pursuant to § 922(g)(8) that the defendant and this victim were "intimate partners" within the meaning of the statute. While the state court issuing the DVPO had to make specific findings so that the order would be valid, the relationship status of "intimate partners" was not one of them. This is an element only of the federal case and must be proven only in pursuance of conviction under § 922(g)(8). To satisfy the elements of § 922(g)(8) then, the government must prove that the defendant had sufficient ability to participate in the underlying domestic violence hearing, that the DVPO was granted only upon a finding that violence of threat of violence was reasonably likely, and that the victim was an intimate partner of the defendant. In this way the proceedings in this Court will ensure that the defendant receives the constitutionally required due process.

B.      *Section 922(g)(8) Is Not Unconstitutionally Vague*

The defendant next argues that the statute is unconstitutionally vague because it does not contain definitions precise enough for him to determine whether or not his victim was an "intimate partner" and, thus, whether he falls under its restriction from firearm ownership and possession. The statute, however, contains a definition of "intimate partner." Pursuant to 18 U.S.C. 921(a)(32), "[t]he term intimate partner means, with respect to the person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabitated with the person." If the defendant had questions about his status under § 922(g)(8), he had the ability to consult the statute and its definition. Although the word cohabitate, within the definition of "intimate partner," is not itself defined, the word is sufficiently precise in ordinary and common meaning to reasonably put the defendant on notice that his possession of a firearm or ammunition might bring prosecution. *See Vernon Beigay, Inc. v. Traxler*, 790 F.2d 1088 (4th Cir. 1986) ("we recognize that unavoidable imprecision is not fatal and celestial precision is not necessary . . . a fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted taking their ordinary, contemporary, common meaning") (internal citations omitted). If he believes that he was not an "intimate partner" with the victim, as defined by the statute, he will have the opportunity to argue that factual defense before the jury.

The defendant's claim, that the statute is so vague as to be uncomprehensible, is also belied by the facts of this case. The defendant had actual knowledge that he was not permitted to possess firearms or ammunition. The DVPO warned him that to possess such items might be a violation of both state and federal law. He was the subject of a court order which sought to dispossess him of his firearms and ammunition. It further appears that he requested his father-in-law remove these

-9-

items from his place of residence while police attempted to execute the order and then later requested that he bring them back.  For these reasons the Court **FINDS** that the statute is not unconstitutionally vague as applied to Mr. Chapman.

## II.     The Defendant's Dispossession of Firearms Pursuant to § 922(g)(8) Does Not Violate the Second Amendment

The defendant's final argument is that dispossession of firearms pursuant to § 922(g)(8) is unconstitutional under the Second Amendment to the United States Constitution.  The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amend 2.  For many years, the prevailing thought in federal courts was that this right was a collective right connected with service in a state organized militia (or an individual right which could only be exercised in connection with militia service).  *See Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir.1995); *United States v. Warin*, 530 F.2d 103, 106 (6th Cir.1976); *Gillespie v. City of Indianapolis*, 185 F.3d 693 (7th Cir.1999); *Hickman v. Block,* 81 F.3d 98, 99 (9th Cir.1996); *Cases v. United States*, 131 F.2d 916, 923 (1st Cir.1942); *United States v. Rybar*, 103 F.3d 273, 286 (3d Cir.1996); *United States v. Hale,* 978 F.2d 1016 (8th Cir.1992); *United States v. Oakes*, 564 F.2d 384 (10th Cir.1977); *United States v. Wright,* 117 F.3d 1265 (11th Cir.1997); *but cf. United States v. Emerson*, 270 F.3d at 260 ("We reject the collective rights and sophisticated collective rights models for interpreting the Second Amendment. We hold . . .that it protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms. . .").

-10-

These militia-dependant interpretations of the Second Amendment were soundly rejected by the Supreme Court in *Heller*. 128 S.Ct. 2783 (2008). The question before the *Heller* court was the constitutionality of a District of Columbia statute that "generally prohibit[ed] the possession of handguns" by all persons within the District, save a few narrowly defined exceptions. *Id.* at 2788. It also prohibited lawful gun owners from keeping their firearms loaded or effectively "functional" within the home. *Id.* The outcome of the case depended upon whether the Court interpreted the Second Amendment as a right which could only be exercised in connection with a militia (in which case the statute would be lawful) or whether the right was broader and protected some individual right to keep firearms for a citizen's own use – unconnected with any militia (in which case the broad D.C. gun ban would likely fail to pass constitutional muster). In reviewing the Second Amendment, the Court divided it into its operative clause – "the right of the people to keep and bear Arms, shall not be infringed," and its prefatory clause – "[a] well regulated Militia, being necessary to the security of a free State." *Id.* at 2789. After conducting a historical inquiry into the meaning of the statute's text, the Court determined that the operative clause did encompass an individual citizen's right to keep and bear arms apart from militia service and that this phrase was not to be limited by the prefatory clause. *Id.* at 2801-02. The prefatory clause, the Court explained, announces a purpose for enacting the amendment but does not define the right protected. *Id.* In fact, the Court found that the "core" of the Second Amendment protection was, not participation in a militia, but protecting an interest in "the right of law-abiding, responsible citizens to use arms in the defense of hearth and home." *Id.* at 2818, 2821.

The Court declined to establish a particular level of constitutional scrutiny for review of the statute, because "[u]nder any of the standards of scrutiny that we have applied to enumerated

constitutional rights, banning from the home the most preferred firearm in the nation to 'keep' and use for protection of one's home and family, would fail constitutional muster."  *Id.* At 2817-18 (internal citations omitted).  It did, however, explicitly reject two suggested levels of scrutiny: rational basis review; and an "interest-balancing approach" suggested by Justice Breyer in dissent. *Id.* at 2818 n. 27 ("If all that was required to overcome the right to keep and bear arms was rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect.); *id.* at 2821 ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach.").  The Court also signaled that its decision should not be over-read by lower courts as invalidating all existing firearm regulation.  *Id.* at 2816-17.  It cautioned,

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.*  And further explained in a footnote, "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at n. 26.

Predictably, and despite the Court's call for caution, challenges to firearm regulations of all kinds immediately began to crop up across the country. As a result of the Court's list of "presumptively lawful regulatory measures" some of these challenges were dealt with relatively simply.  *See e.g. United States v. Anderson,* 559 F.3d 348, 352 (5th Cir. 2009) (upholding ban on felons in possession); *United States v. Brunson*, 292 Fed. Appx. 259, *261 (4th Cir. Sept. 11, 2008)

(unpublished) (upholding ban on felons in possession); *United States v. McRobie,* 2009 WL 82715 at *1 (4th Cir. Jan. 14, 2009) (unpublished) (upholding ban on mentally ill possessing firearms). Challenges to other statutes have proven more complicated. In this case, the defendant challenges the constitutionality of § 922(g)(8) post-*Heller*.

Several other courts have reviewed § 922(g)(8) in the time since *Heller* was decided; every one of them has found the statute to pass constitutional muster. *See United States v. Knight*, 574 F.Supp. 2d 224, 226-27 (D. Me. 2008); *United States v. Luedtke*, 589 F.Supp.2d 1018, 1023 (E.D. Wisc. 2008); *United States v. Erwin*, 2008 WL 4534058, at *3 (N.D. N.Y. Oct. 6, 2008); *United States v. Grote*, 2009 WL 853974, at *7 (E.D. Wash. Mar. 26, 2009); *United States v. Montalvo*, 2009 WL 667229 at *4 (W.D. N.Y. Mar. 12, 2009). This Court has recognized the need to review carefully the challenges to provisions of § 922(g), and has recently rejected an approach which assess constitutionality by similarity to the list of presumptively reasonable restrictions in *Heller*. *See United States v. Tooley,* No. 3:09-cv-194, slip op. (S.D. W.Va. June 14, 2010).  It has also determined that intermediate scrutiny is appropriate, and historically justified, when a firearm restriction is placed upon one who has committed a crime or might otherwise reasonably be perceived to be a danger.  *Id*.  Such a person is not within the "core" of the Second Amendment right, as defined by *Heller* – "the right of law-abiding, responsible citizens to use arms in the defense of hearth and home." *Id.* (citing *Heller,* 128 S.Ct. at 2818, 2821).

The defendant in this case was not adjudicated guilty of a criminal offense which would restrict his right to firearm possession.  He was, however, determined by a judicial officer likely to have committed domestic abuse.  Additionally, he was found to be a likely threat of violence or

intimidation in the future.  As such, this Court believes that he is justifiably outside the "core" of the Second Amendment right.  Intermediate scrutiny will apply.

In this Court's view, the appropriate version of intermediate scrutiny to apply to a restriction of Second Amendment rights outside of the "core" of that right is the one articulated by the Supreme Court in *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989).  This standard requires an exceedingly persuasive government interest and "a fit between the legislature's ends and the means chosen to accomplish those ends, . . . a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *United States v. Tooley,* No. 3:09-cv-194, slip op. at 22 (S.D. W.Va. June 14, 2010) (quoting *Fox*, 42 U.S. at 480).

There can be little doubt that the governmental interest at issue in passing § 922(g)(8) was not only "exceedingly persuasive" but in fact compelling.  The Supreme Court has ruled in the past that protecting "the safety and indeed the lives of its citizens" is indeed "compelling" for purposes of constitutional scrutiny.  *United States v. Salerno* , 481 U.S. 739, 750, 754-55 (1987). Circuit Courts of Appeal have specifically found that reducing domestic violence is a compelling governmental interest.  *See e.g. United States v. Lippman,* 369 F.3d 1039, 1043 (8th Cir. 2004); *United States v. Calor*, 340 F.3d 428, 432 (6th Cir. 2003); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1057 (9th Cir. 2002).   For this reason, the Court **FINDS** that the governmental interest at issue here is a compelling interest.

This Court also believes that § 922(g)(8) is sufficiently narrowly tailored to pass constitutional muster.  First and foremost, it is a time-limited restriction that only applies while the state court order is outstanding.  It requires specific procedural safeguards to be present in order for

-14-

a domestic violence restraining order to be applicable to a federal firearm restriction.   "The threatened conduct that is a prerequisite to the prohibition is serious: 'harassing, stalking, threatening,' or other conduct that would cause 'reasonable fear of bodily injury." *Luedtke,* 589 F.Supp.2d at 1025 (quoting 18 U.S.C. § 922(g)(8)).   Finally, the statute requires a finding that a recipient is a specific and "credible threat to the physical safety" of another or contain an explicit prohibition on the use of force or threatened force "that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8).  The statute is so narrowly drawn that other courts have found it would pass not only intermediate, but strict scrutiny.  *Id.; United States v. Knight*, 574 F.Supp.2d 224 (D. Me. 2008)*; United States v. Erwin*, 2008 WL 4534058 at *2 (N.D. N.Y. Oct. 2008).  While this Court does not go so far as to find it would necessarily pass strict scrutiny, it does **FIND** that the statute is at least sufficiently tailored, in proportion to the government's compelling interest, to pass intermediate scrutiny.

### Conclusion

For the reasons explained above, the defendant's Motion to Dismiss (Doc. 38) is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.


ENTER:   June 14, 2010


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-15-